**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**


**DAWN SHOLAN**
    Plaintiff

**v.**                                          **No. 1:11CV-00010-M**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Robert Harrison. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 13, respectively. Upon motion by counsel, this matter was held in abeyance until October 7, 2011, so that counsel might recuperate from surgery (Docket Entry No. 15). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on October 14, 2009, by administrative law judge (ALJ) Anthony Smereka. In support of his decision denying Title II benefits, Judge Smereka entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since August 9, 2006, the alleged onset date (20 CFR 404.1571 et seq.).

3.  The claimant has the following severe impairments: obstructive sleep apnea, narcolepsy, bi-polar disorder, and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional stooping, kneeling, crouching, reaching in all directions (above shoulder, at waist level, and below waist level), no more than frequent handling, fingering, or feeling with the hands and never driving, climbing, or balancing.  The claimant has moderate limitations in ability to maintain attention and concentration for extended periods of time, to interact appropriately with the general public, and to respond appropriately to changes in the work setting.  The claimant can understand, remember, and carry out simple and detailed tasks in a setting that is not excessively pressured or demands frequent changes and can maintain concentration and attention for two hour segments in an eight hour work period.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on March 7, 1975, and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2006, through the date of this decision (20 CFR 404.1520(g)).

(Administrative Record (AR), pp. 22-28).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

The ALJ acknowledged that the plaintiff suffers from obstructive sleep apnea (OSA), narcolepsy, and obesity. According to the free on-line encyclopedia Wikipedia:

> Obstructive sleep apnea (OSA) or obstructive sleep apnea syndrome is the most common type of sleep apnea and is caused by obstruction of the upper airway. It is characterized by repetitive pauses in breathing during sleep, despite the effort to breathe, and is usually associated with a reduction in blood oxygen saturation. These pauses in breathing, called apneas (literally, "without breath"), typically last 20 to 40 seconds.

> The individual with OSA is rarely aware of having difficulty breathing, even upon awakening. It is recognized as a problem by others witnessing the individual during episodes or is suspected because of its effects on the body (sequelae). OSA is commonly accompanied with snoring.

> Symptoms may be present for years, even decades without identification, during which time the sufferer may become conditioned to the daytime sleepiness and

fatigue associated with significant levels of sleep disturbance. Persons who sleep alone without a long-term human partner may not be told about their sleep disorder symptoms.

When sleeping or attempting to sleep, the plaintiff uses a CPAP [i.e., continuous positive airway pressure] machine.

Narcolepsy, in contrast, is described as follows:

Narcolepsy is a chronic sleep disorder, or dyssomnia, characterized by an excessive urge to sleep at inappropriate times, such as while at work. People with narcolepsy often experience disturbed nocturnal sleep and an abnormal daytime sleep pattern, which often is confused with insomnia. Narcoleptics, when falling asleep, generally experience the REM stage of sleep within 10 minutes; whereas most people do not experience REM sleep until an hour or so later. ... Narcolepsy is a neurological sleep disorder. It is not caused by mental illness or psychological problems. It is most likely affected by a number of genetic abnormalities that affect specific biologic factors in the brain, combined with an environmental trigger during the brain's development, such as a virus.

The plaintiff claims that she is disabled by her inability to stay awake on the job. On October 8, 2007, the plaintiff's treating neurologist, Walter Warren, completed a "Physical Capacities Evaluation" form submitted by the plaintiff's insurance carrier, Hartford Group (AR, pp. 402-403). Dr. Warren's findings are compatible with performance of a limited range of light work. However, Dr. Warren stated that "the problem here is falling asleep from OSA and narcolepsy, not [physical] capacity while fully awake. ... If the treatments fail, sleepiness beyond her control may result" (AR, pp. 402-403). In his written decision, the ALJ interpreted Dr. Warren's findings as pertaining to the plaintiff's capacities when she is, in fact, awake (AR, p. 26). The ALJ "adopt[ed] Dr. Warren's findings which allow for a range of light work activity" (AR, p. 26). The ALJ further found that the plaintiff can "maintain concentration and attention for two hour segments in an eight hour work period" but should "never driv[e]" as part of her job duties. Finding No. 5.

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The ALJ asked the VE to consider an individual having the limitations assigned by Dr. Warren and summarized in ALJ's Finding No. 5 (AR, pp. 24-25 and 51). The VE testified that the individual could not perform the plaintiff's past relevant work as an over the road truck driver. However, the individual would retain the ability to perform jobs that exist in significant numbers in the national economy such as light and sedentary officer helper (AR, p. 51).

Unless the plaintiff points the court to evidence in the administrative record, which the ALJ was required to accept, that she suffers from an additional, vocationally-significant restriction, the court should affirm the Commissioner's final decision upon the strength of the vocational testimony. See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987). The plaintiff has failed to identify any such evidence. Therefore, we shall recommend an affirmance of the ALJ's decision. The plaintiff's specific contentions shall be considered in turn.

The plaintiff presents three issues upon judicial review. Her first contention is "the [ALJ] commit[ted] error by failing to properly evaluate the Plaintiff's obesity as is required by SSR 02-1p being her obesity is a severe impairment an an impairment which effect must be analyzed in combination with plaintiff's other severe impairments" (Docket Entry No. 12, p. 2). The standards for evaluating obesity were discussed in *Wilson v. Astrue*, 2011 WL 4479032 (E.D.Ky.) as follows:

> Social Security Ruling 02–1p explains the Social Security Administration's policy on the evaluation of obesity. SSR 02–1 p, 2000 WL 628049 (Sept. 12, 2002). While SSR 02–1p does not offer "any particular procedural mode of analysis" for the ALJ's consideration of obesity, *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir., 2006), it offers guidance as to how obesity should be considered at each sequential step of the analysis. For example, at Step 4, "an assessment should [ ] be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02–1 p, at *6. Moreover, the

ALJ should recognize that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. Most importantly, the ALJ must explain how he reached his conclusions on whether the claimant's obesity caused any physical or mental limitations. Id. at *7.

The magistrate judge concludes that the ALJ's evaluation of the plaintiff's obesity was legally adequate, to-wit (AR, pp. 18 and 26):

The claimant has the [] severe impairment[] [of] obesity.... [T]he claimant has the above mentioned capacity [i.e., the limitations assigned by Dr. Warren at AR, pp. 402-403], obviously taking into account her complaints of [] obesity.

We further observe that the ALJ's ultimate finding of lack of disability is supported even if the plaintiff is limited to sedentary work, i.e., sedentary office helper.

The plaintiff's second contention is that "the [ALJ] commit[ed] error by finding that Plaintiff was not credible and in doing so disregarding her treating physician's findings" (Docket Entry No. 12, p. 2). As noted above, the ALJ's RFC finding No. 5 was based upon acceptance of the treating physician findings of Dr. Warren (AR, pp. 26, 51, and 402-403). Therefore, it is not immediately apparent what the plaintiff is referring to when she indicates that the ALJ "disregard[ed] her treating physician's findings."

As noted above, on his physical capacities assessment form, Dr. Warren stated that "the problem here is falling asleep from OSA and narcolepsy, not [physical] capacity while fully awake. ... If the treatments fail, sleepiness beyond her control may result" (AR, pp. 402-403). The VE testified that these findings are "really too speculative from a vocational standpoint. It doesn't indicate that the treatments are failing. Or if they do, how often she might have the sleepiness" (AR, p. 50). Perhaps the plaintiff is referring to Dr. Warren's letter to the state agency "Disability Examiner" dated March 19, 2007, which states, in part, as follows (AR, pp. 252-253) *(emphasis added)*:

8

I first saw [the plaintiff] on August 22ⁿᵈ of last year for symptoms of snoring, restless sleep, daytime fatigue and headaches. ...

About the end of my work up I concluded she had obstructive sleep apnea manifesting itself on a sleep study at 90 spells per hour of sleep, unless she was exclusively supine which it was 21 per hour of sleep, and it was even more severe when she was exclusively in dream sleep in any position which was around 60 times per hour. Her oxygen would drop in the 73% range and her snoring was severe. She got on CPAP [i.e., continuous positive airway pressure] for it toward the end of 2006 and I followed her for several visits since that time. She persists to have daytime sleepiness, for example, we asked eight questions each one being zero to three, (zero would be no trouble and three would be severe trouble, and the worse you could be is 24 and the best you could be is zero). She scored 17 on sleepiness. **This is a subjective test** in spite of the use of her CPAP. ...

She was last seen here in February of this year, again she had the extreme sleepiness. She was using her machine 83% of the time averaging about five hours a night. So, in spite of the diagnosis which has been objectively proven and the treatment which is being used in a compliant way, the resolution of the drowsiness has not taken place. There is more here to be done in terms of medication, perhaps pressure, perhaps surgery, but I think **in her occupation of driving this would be a handicap and I could see it qualifying as a disability**.

As indicated above, the ALJ prohibited all on-the-job driving.

On April 25, 2007, Dr. Warren opined to the Disability Examiner that the plaintiff "is sleepy to the extent that she would not be able to maintain vigilant tracks with any reliability" (AR, p. 255). The magistrate judge is unable to locate any medical or technical meaning of the phrase "vigilant track." The fourth definition of "track" in the on-line Merriam-Webster dictionary is a "sequence of events or a train of ideas." The ALJ found that the plaintiff is limited to "maintain[ing] concentration and attention for two hour segments in an eight hour work period" and that "some of the claimant's fatigue, by her own admission, is related to her activity level. She testified that she does not fall asleep if she is active" (AR, pp. 25 and 46). It is not apparent that the "tracks" Dr. Warren had in mind were greater than two hours in duration. The magistrate judge concludes that there is no genuine incompatibility between the ALJ's findings and the opinions of

her treating physician. Furthermore, to the extent there was such an incompatibility, the treating physician's opinion was tantamount to a finding that the plaintiff is per-se disabled. Such opinions are not genuine medical opinions but rather opinions by medical sources going to the ultimate issue of disability, which are always reserved to the Commissioner. See 20 C.F.R. § 404.1527(e).

Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). The ALJ and not a reviewing court is to make credibility findings regarding a claimant's subjective complaints. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). The magistrate judge concludes that the plaintiff has failed to show that the ALJ acted outside his province or abused his discretion in determining that the plaintiff is credible only to the extent that she remains capable of performing the job demands of a light or sedentary office helper.

The plaintiff's third and final contention is that the ALJ did not "properly consider the combined effect of all the plaintiff's severe impairments when he found the plaintiff was able to do substantial gainful employment in the workplace" (Docket Entry No. 12, p. 3). Perhaps the plaintiff is suggesting that, while her obesity may allow her to perform sedentary work, she needs to be doing at least light work to avoid falling asleep. In any event, the magistrate judge concludes that the argument is conclusory. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir., 1997). We further observe that the ALJ repeatedly referred to the plaintiff's "impairments" in the plural, indicating that he did, in fact, consider the combined effect of all of her impairments.

10

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), any party shall have a period of fourteen (14) days, including intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a)(1)(B), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period. Fed.R.Civ.P. 6(d) and 5(b)(2)(E).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).